## THE CITY *v.* BABCOCK.

1. Courts sitting in error will not discuss questions not raised by the record
   before them.
2. Where a party has a verdict given against him on insufficient evidence,
   his remedy is by motion for new trial.  He has no remedy in a court
   of error.

AMONG the festal anniversaries of the city of Providence,
R. I., is that known as " Commencement Day."  Upon this
occasion Brown University gives its degrees; and citizens
and strangers throng the town.  Upon the anniversary of
1859, Miss Babcock, of Connecticut, visited Providence and
was participating in the spectacle.  A procession was pass-
ing through one of the streets in a central part of the city,
and Miss Babcock, who was walking in the same street,
then filled with people, fell through an opening in the pave-
ment which gave entrance into a cellar below, whereby she
was severely injured.

A statute of Rhode Island imposes upon all cities within
its bounds an obligation to keep their ways " *safe and con-
venient* for travellers;"_ and the office of the *mayor of the city
having*, as was proved, *been on the very street where the accident
happened, and almost directly opposite to the place of its occurrence*,
Miss Babcock brought suit against the city in the Circuit
Court for Rhode Island, to recover damages for the injury
she had suffered.

On the trial, the city offered evidence tending to prove that the alleged defect in the street was an opening in the sidewalk adjoining a storehouse, extending fifteen inches from the side of the building, four feet long, and covered with a substantial door, upon hinges, near the building, and which, when raised, left an opening to the cellar of fifteen inches wide outside of the curbstone; in other words, that it was an ordinary vault entrance; a trap-door to a cellar below. The entrance, it appeared, had been used for the purpose of business for a long period of time—say forty years; the street, in fact, having been laid out in 1829, and the opening used as an entrance to the cellar before that time. The occupants of the store testified that the opening was used to let in and take out goods from the cellar of the store, and for this purpose that the lid was raised whenever they had occasion to raise it in their daily business; more or less every business day in the year; that they intended to keep it closed when not opened for such use, but they could not say that it was always so kept.

Complaints, it appeared, had been made to the *occupants of the store* that the opening was unsafe.

It did not appear who opened the trap next before the accident; but no one was engaged on that day, in taking in goods or taking them out, and no one was in the cellar when the plaintiff fell through the opening. One of the occupants of the store testified that the opening *had not been open more than six minutes before the occurrence of the accident.*

"*Much other testimony,*" the bill of exceptions went on to say, "*was also introduced, on the one side and the other, which is not reported.*"

The court charged that the plaintiff must prove—

1st. That the way described was a street which the city was bound by law to keep in repair.

2d. That it was defective on the day of the injury.

3d. *That the city had notice of the defect.*

4th. That the plaintiff was travelling with ordinary care.

5th. That the plaintiff was injured.

6th. That the injury was occasioned solely by the defect

in the street, and not from want of ordinary care on the plaintiff's part.

The defendant then, invoking the benefit of the testimony already above stated, requested the court to instruct the jury thus :

The defendant *offered evidence tending* to prove that the defect in the street in question was an opening in the sidewalk adjoining a storehouse extending fifteen inches from the side of the building, four feet long, and covered with a substantial cover, upon hinges, near the building, and which, when raised, left an opening to the cellar of fifteen inches in width; that the sidewalk was six feet in width outside of the curbstone; that the entrance had been used for the purposes of business prior to the time when the highway was laid out over the land adjoining the building and including this sidewalk; that the cellar-way had been used by the occupants of the store for more than forty years, for the purpose of taking in and putting out merchandise in the course of their business, being opened for that purpose as required during the periods of actual use; that on the occasion of the accident the door covering the opening had been raised for use by the occupants of the store but six or eight minutes; that no complaint had been made to the occupants of the store, or to the city authorities, of this mode of use, though this street was one of the great avenues for pedestrians in the city of Providence.

And thereupon asked the court further thus to charge :

The owners of the store had the right so to use this opening in the sidewalk for the purposes of actual business; that it was not negligence on the part of the city to allow such an opening, so protected and used, to be continued, *and that upon the evidence the city had no notice that the highway was unsafe or inconvenient by the opening of the cellar door and keeping it open for use during the period testified to.*

But the court refused so to charge; and the jury having found for the plaintiff $3300, the correctness of such refusal was now the question here.

*Mr. Jenckes, for the city, plaintiff in error:* The evidence was that the lid had not been open for more than six minutes

before the accident occurred. It was impossible that the *city* could have either notice or knowledge of its being open. Constructive notice cannot be set up. Actual notice is not pretended. If the city had had notice, they were not bound to shut the trap if the owners were using it in the ordinary and long and safely practised course of their business. Undeniably the owners of the store had a right to have such a cellar as they had, and to have in it also such an entrance as was there. Such modes of access to cellars exist in every city, and this entrance had existed where it did for half a century. The same owners had as plain a right to raise the covering of the cellar for the purpose of actual business, and to keep it open while they were engaged in so using it.* When they were thus using it, both the public and the owners of the storehouse enjoyed their rights without conflict, and the aperture would not become a defect in the highway.

The statement of the bill of exceptions that "much other testimony was also introduced on the one side and on the other, which is not reported," means, obviously, that much *irrelative* testimony was so introduced; much testimony which did not bear on the case. Under these circumstances, the case is that of a suit brought, not against the owner of the property where the vault was, and who might be liable, without notice of danger, but against the city, which cannot be liable unless it *have notice*, by a person who has fallen through the trap-door of an ordinary city vault, such a vault as the owner of the store had a clear right to have and to use, *which trap-door was not open more than six minutes before the accident happened.*

Upon such a case the court should have charged, as we asked it to do, that the city had *no notice* that the street was unsafe or inconvenient. The consequence of the omission of the court thus to charge was that the jury misconceived the law and gave the erroneous as well as heavy verdict which they did.

---

* O'Linda *v.* Lothrop, 21 Pickering, 292; Underwood *v.* Carney, 1 Cushing, 285.

After argument by *Mr. Potter*, for the defendant in error, Mr. Justice DAVIS delivered the opinion of the court.

It is argued by the plaintiff in error that the defect in the street was so recent that the city could not be deemed to have constructive notice; and, as no actual notice was proved, no liability could attach. But, as this question is not presented by the record, we are not called upon to discuss it, and to declare under what circumstances the city could be exonerated from liability for damages by reason of defective sidewalks. The bill of exceptions does not purport to contain all the evidence on the trial, nor even the substance of it, for it says, after reciting certain proofs, "that much other testimony was also introduced on the one side and the other which is not reported."

Such being the case, the correctness of the finding of the jury is not involved, and every presumption is in favor of the verdict, and that it was supported by the evidence on the trial. There was evidence which *tended* to establish the liability of the city, and the court properly charged the jury that the plaintiff, to maintain her action, must prove that the city had notice of the defect in the street. If the evidence were not enough, the corrective was in the hands of the court, on a motion for a new trial. It was conceded, in the argument, that the court ruled properly in the instructions which were given to the jury; but it was insisted that there was error in refusing to instruct, as requested by the defendant. The court was asked, substantially, to charge the jury, that the city was not responsible, because there was evidence which *tended* to prove the existence of certain facts. This the court had no right to do. The court could not tell the jury that *any* legal results followed from evidence which only *tended* to prove the issue to be tried. This controversy necessarily turned on the finding of the jury upon the evidence, and an instruction, which sought to withdraw from the jury the right to determine matters of fact, was correctly refused.

JUDGMENT AFFIRMED.